James C. O’Brien,
Off. Bef. I have concluded that the plaintiffs have not established their cause of action and that the complaint must be dismissed, with costs.
The action is brought under section 51 of the General Municipal Law. The City of Geneva sold and conveyed to defendant *849 Charles W. Flint a piece of vacant real property located on Lochland Road in the City of Geneva. Plaintiffs claim that this conveyance was illegal and constituted a waste of taxpayers’ money. They seek to annul the transaction and to set aside the conveyance.
This piece of land was acquired by the City of Geneva more than 20 years ago on a tax foreclosure sale, and ever since that time has been off the tax rolls. The Common Council of the city determined to sell the property so that it could be put back on the tax rolls and increase the revenues of the city. By resolution the Common Council directed that the land be sold and directed that a notice be published once a week for two weeks, in a newspaper in Geneva, requesting that sealed bids be submitted on or before 3:00 p.m., on June 12, 1959.
Two bids were in fact received, one for $4,500, and the other from Tulsa Rig and Reel ■ Manufacturing Company (hereinafter called Tulsa Company) for $10,000. This bid was accompanied by a certified check to the order of the City of Geneva for the full amount of the bid.
The bids came up for consideration by the council and the. committee of the council requested that the matter be adjourned to the next meeting so that they could study the bids. It was so adjourned. The next meeting was' held on the adjourned date, July 2, 1959, and at that meeting it was announced that a bid had just been received from attorney O’Riely, a local lawyer (acting for an undisclosed principal) in the sum of $14,000. No check, bond nor even a deposit accompanied this bid nor has any money, check, deposit or other security for this bid ever been received by the municipality. A local attorney, Mr. Gregory, who acted as counsel for the Tulsa Company and defendant Flint, who is the president of that company, filed with the council a written document by which Tulsa Company assigned to Mr. Flint its bid for the land.
The council, after some discussion and deliberation, concluded to accept the $10,000 bid and reject the bid for $4,500 and $14,000 already mentioned.
Plaintiffs complain that the rejection of the bid for $14,000 and acceptance of $10,000 constituted a waste of $4,000 of the taxpayers ’ money. With this I cannot agree.
Since the city had advertised for bids to be submitted by a definite date and hour, I do not see how the city could accept a bid received weeks after the deadline. The council, of course, could have rejected all three bids and readvertised for new bids and it may be that the undisclosed principal for whom Mr. *850 0’B.iely purported to act, might bid $14,000 or some similar sum and might have proven himself financially responsible to make payment if his bid were accepted. On the other hand the city authorities had no. assurance or guarantee that he would do so nor could the council of the city be sure that the Tulsa Company would rebid $10,000 or a larger sum. That company might not rebid at all. The council, accordingly, was confronted with the necessity of making a decision as to whether to chance a rejection of all bids with the hope that a sum larger than $10,000 would be bid for the property or to act conservatively and accept the $10,000 bid for which a certified check was at band. They chose the latter course.
In making this choice the council used their discretion and in my opinion acted in what they believed to be the best interests of the city. There was no evidence produced by the plaintiffs to show any fraud, corruption or bad faith on the part of the council, any of its members or any municipal officer. The action of the municipal authorities in exercising their discretion under these circumstances is something with which courts will not ordinarily interfere. (Matter of Magnotta v. Gerlach, 301 N. Y. 143; O’Shea v. Hanse, 147 N. Y. S. 2d 791; New Colonia Ice Co. v. Woolley, 181 Misc. 473.)
The plaintiffs’ obligation is to prove an illegal act or show a waste of the taxpayers’ money. The acceptance of the $10,000 bid in preference to the bid of $14,000, late, and made by an attorney for an undisclosed principal without any security, I feel does not constitute either an illegal act or a waste of taxpayers’ money.
Plaintiffs raise various other objections which I shall briefly consider. After the council adopted a resolution accepting the bid of the Tulsa Company for $10,000, they submitted this resolution to the Mayor for his approval. Under the Geneva City Charter the Mayor is given the power (§§ 20, 46; L. 1897, ch. 360 as amd. by Local Law, No. 7, 1951) of vetoing ordinances and resolutions. Section 140 of the City Charter relating to purchase and sales of property for delinquent taxes, empowers the Common Council to have the control of parcels acquired as tax delinquent, and specifically provides that the council may lease, sell and convey the same. The Mayor vetoed the resolution of the council by which the $10,000 bid was accepted. Whether or not he had the right to veto and whether or not his veto was effective, it is not necessary for me to determine because at a subsequent meeting of the council on August 6, 1959, the council unanimously resolved that , the $10,000 bid be *851 accepted. The president of the council thereupon announced that this resolution overrode the Mayor’s veto of July 10. I agree.
Plaintiffs point out that the vetoed resolution accepted the bid of the Tulsa Company whereas the overriding resolution accepted the bid of Charles W. Flint as the assignee of the Tulsa Company. The overriding resolution also contained a provision that Flint should convey to the city a 10-foot easement along the west side of the property which in fact was done by Flint at or after the date of the conveyance of the property to him by the city. Plaintiffs take the position that the overriding resolution was sufficiently different in form so that it would not constitute an overriding of the Mayor’s veto, citing People ex rel. U. S. Std. Voting Mach. Co. v. City of Geneva (98 App. Div. 383). In this case the resolution adopted, as stated in the court’s opinion was not either in form or substance the same as the vetoed resolution. In the instant case it seems to me that the second resolution was substantially the same as the first. There are only two differences: In the first place the overriding resolution provides that the bid of Flint, as assignee, be accepted whereas in the first resolution it was provided that the bid of the original assignor be accepted. Flint never bid at all and plaintiffs argue that by reason of that fact and this difference the second resolution did not override the first. However, as we have seen, the original bidder assigned its bid to Flint and it seems, therefore, that when the council resolved that the property be sold to Flint, as assignee, on the $10,000 bid originally made by Tulsa, Flint’s assignor, their action was equivalent to a repassage of the original vetoed resolution.
The second point of difference is that in the overriding resolution the council recorded the fact that Flint was willing to grant an easement to the city. This grant was gratuitous on Flint’s part. The conveyance when made did not reserve any such easement. Flint conveyed it to the city by a separate grant. The facts here are very different- from those which are recited in the opinion in the case of People ex rel. U. S. Std. Voting Mach. Co. v. City of Geneva (supra) and to hold that the second resolution here was not substantially the same as the one originally vetoed by the Mayor would be to exalt form over substance to an unreasonable degree.
Plaintiffs also urge as an objection that the procedure in inviting sealed bids rather than selling the property at public auction, was invalid because it was a violation of the provisions of sections 45 and 46 of the Geneva City Charter. Section 45 *852 provides in fact that the sale of ‘ ‘ city real estate ’ ’ shall be by public auction. Substantially the same provisions and identical language appear in the General City Law (§23). This language was construed by Mr. Justice Foster, writing for the Third Department of the Appellate Division in McSweeney v. Bazinet (269 App. Div. 213). It was there held that the term “ city real estate” was never intended by the Legislature to apply to lands acquired as a result of tax sales. It was there held that the term ‘ ‘ city real estate ’ ’ was intended to designate only property which was owned by the city and used for municipal purposes. This interpretation seems reasonable and I feel that it disposes of this objection.
Plaintiffs have made no proof of bad faith. Only one matter of substance appears in the proof and that is the failure of the council upon receipt of a late bid for $14,000, to reject all bids and readvertise in the hope that the city would receive more than $10,000 for the property. I feel, as already stated, that this action of the council was a reasonable exercise of its legislative discretion and should not be interfered with. All the other objections are technical and procedural and in my view are without merit.
The complaint should be dismissed, with one bill of costs to be divided equally between (a) defendants Tulsa Company" and Flint on the one hand, and (b) the other defendants on the other hand.